**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina Dawn Mertens,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W Colvin,<br><br>　　　　　Defendant. | No. CV-15-02296-PHX-DGC<br><br>**ORDER** |

　　　Plaintiff Christina Dawn Mertens seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits under Sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.　Background.**

　　　Plaintiff, a 49-year-old woman, has an MBA and previously worked as a marketing researcher, elementary and middle school teacher, and retail supervisor. On November 17, 2011, Plaintiff applied for disability insurance benefits, alleging disability beginning March 12, 2010. On February 21, 2014, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On April 14, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the

hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the

claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work.  § 404.1520(a)(4)(iv).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience.  § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and that she had not engaged in substantial gainful activity since March 12, 2010, the alleged onset date.  A.R. 23.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with a history of decompression laminectomy, discectomy, and fusion; diabetes; post-traumatic disorder; and depression.  *Id.*  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  A.R. 25.  At step four, the ALJ found that Plaintiff has the RFC to perform "light work as defined in 20 [C.F.R. §] 404.1567(b) except she can perform only simple, repetitive tasks."  A.R. 27.  The ALJ further found that Plaintiff is unable to perform any of her past relevant work.  A.R. 35.  At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  A.R. 36.

**IV. Analysis.**

Plaintiff argues the ALJ erred by: (1) improperly rejecting Plaintiff's testimony as to the severity of her symptoms; (2) improperly rejecting the VA disability determination; (3) improperly relying on medical-vocational guidelines to determine that Plaintiff could perform work that exists in significant numbers in the national economy; (4) failing to consider that Plaintiff could only perform simple, repetitive tasks; and (5) failing to articulate a basis for determining Plaintiff's work capacities.

### A. Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's RFC assessment.

Plaintiff testified that her fibromyalgia "works hand-in-hand with [her] spinal cord injury and . . . it takes [her] about four hours in the morning to where [she] can actually get going." A.R. 58. Plaintiff testified that after "two or three hours" she needs to take a nap because she is usually "pretty exhausted." *Id.* Plaintiff testified that she has pain that radiates throughout her body, including pain in her back, ankles, elbows, wrists, or shoulders. A.R. 58-59. Plaintiff described the pain as like "a thousand or a million sharp, hot needles prickling all at one time." A.R. 59. Plaintiff testified that stress or pressure can cause her to experience radiating pain. *Id.* Plaintiff stated that her "lower back is almost constantly in pain because of the implants," which causes chronic migraines. *Id.* Plaintiff testified that she experiences three-to-five migraines a month that last one-and-a-half days on average. A.R. 60-61. Plaintiff estimated that this would cause her to miss around seven days of work per month. A.R. 61. During a migraine, Plaintiff cannot eat and must remain "quiet and still" in "a dark room." *Id.*

Plaintiff also testified about her mental limitations. She testified that she has been diagnosed with post-traumatic stress disorder, which causes her to avoid social interaction. A.R. 64-65. Plaintiff testified that she experiences panic attacks on an almost daily basis. A.R. 65. These panic attacks can be caused by "[a] group of people, a conflict, [her] husband yelling at the dogs," or a traumatic event, like the death of a loved one. *Id.* It can take her up to five hours to get control of her attacks. A.R. 65-66.

Plaintiff testified that it takes her about three or four hours to "grease the joints so that [she] can get moving" in the morning. A.R. 61. She testified that during this warm-up period, she usually reads, watches television, or "just kind of wait[s] until [she] can get into the shower where [she] feel[s] comfortable that [she is] not going to fall." A.R. 61-62. Plaintiff testified that she helps with household chores, including sweeping, cooking meals, and helping care for her husband. A.R. 61-63. Plaintiff testified that she drives to medical appointments, runs errands, and does the family's grocery shopping, although she goes early in the morning to avoid crowds. A.R. 55, 68. After about three or four hours, Plaintiff testified that she needs to take a nap, which typically lasts between one and four hours. A.R. 61-62.

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." A.R. 29. The ALJ summarized Plaintiff's testimony, which covered her physical limitations, her mental limitations, and her activities of daily living. *See* A.R. 27-29. The ALJ found that "the longitudinal evidence of record supports a finding that she is limited as contained in [the ALJ's RFC formulation], but is not as limited as she alleges." A.R. 29. In support of this conclusion, the ALJ provided a thorough summary of the medical evidence in the case. *See* A.R. 29-35. Although Plaintiff has been assessed with severe mental and physical impairments, the ALJ found that she engages in significant daily activities not expected of a totally disabled person, that one medical provider opined she could reenlist in the military, and that the assessed RFC was consistent with the Global Assessment Functioning ("GAF") scores and Plaintiff's activities of daily living. A.R. 35.

1. ***Brown-Hunter.***

Plaintiff first argues that the ALJ's treatment of Plaintiff's symptom evidence is inconsistent with the Ninth Circuit's decision in *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). *See* Doc. 13 at 8-10. In that case, the district court affirmed the ALJ's decision rejecting as inconsistent with the RFC the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms. 806 F.3d at 491. On appeal, the Ninth Circuit stated that an ALJ errs "by making only a single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC], without identifying sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record." *Id.* at 493 (quotation marks and citation omitted). The Ninth Circuit found that the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination," which "is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully . . . [to] ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494. "Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error." *Id.* (citation omitted).

In contrast to *Brown-Hunter*, the ALJ in this case linked Plaintiff's symptom testimony that he did not find credible to particular parts of the record. The ALJ provided a detailed summary of Plaintiff's testimony (A.R. 27-29), and then devoted six pages to detailing the medical evidence in the record and explaining why it did not support Plaintiff's claim (A.R. 29-35). The ALJ concluded that Plaintiff's "allegations regarding her symptoms and limitations are not entirely credible" for three reasons: (1) evidence of significant daily activities; (2) a medical provider's opinion that Plaintiff could reenlist in the military; and (3) objective medical assessments including her GAF scores. A.R. 35.

The ALJ recounted the following list of Plaintiff's daily activities: caring for her disabled husband; caring for her mother, her home, and a pet; preparing simple meals daily; doing small loads of laundry; getting outside two to three days per week; riding public transportation; shopping; managing finances; reading; using a computer; socializing; gardening; belonging to a community group; walking one-to-three miles for exercise; and volunteering for a senator. A.R. 26-27, 33-34. The ALJ also noted that Plaintiff reported to her doctor that she was looking for work in May of 2011, after her claimed disability onset date (A.R. 31), and that she fell and bruised her forearm while "moving a dresser" in November 2012 (A.R. 33). The ALJ found these activities inconsistent with Plaintiffs' claims and the opinions of some medical sources she cited. A.R. 33, 34, 35. The ALJ also noted that Dr. Anthony Rappaport, who treated Plaintiff for more than four years, "was of the opinion that [Plaintiff] was functionally capable [of] reenlisting in the Army" (A.R. 34), and discussed Plaintiff's GAF scores in considerable detail (A.R. 30-32).

In short, the ALJ in this case provided far greater detail for his decision than did the ALJ in *Brown-Hunter*. The Court concludes that *Brown-Hunter* is not controlling.

**2.     GAF Scores.**

The ALJ noted that Plaintiff's numerous GAF scores revealed only moderate symptoms, difficulties, and limitations. A.R. 32. Plaintiff objects to use of GAF scores for two reasons.

First, Plaintiff contends that the ALJ went "'outside the record to medical textbooks for the purpose of making his own exploration and assessment as to'" Plaintiff's condition. Doc. 13 at 10 (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court does not agree. The ALJ cited the "American Psychiatric Association's ("APA") *Diagnostic and Statistical Manual of Mental Disorders* ("DSM") to explain the significance of Plaintiff's GAF scores. The ALJ's citation of the DSM was not for the purpose of independently exploring Plaintiff's condition – it merely explained medical evidence in the record.

Second, Plaintiff argues that both the APA and the Social Security Administration ("SSA") have "abandoned the GAF rating system." Doc. 13 at 10-11. Plaintiff correctly notes that the APA omitted GAF scores from the most recent version of the DSM. *Id.* at 10. Plaintiff erred, however, in asserting that the SSA has "repudiated" the use of GAF scores. Plaintiff's error is illustrated by the very document she cites. In Administrative Message 13066, effective October 14, 2014, the SSA sought to "provide[] guidance to all [s]tate and [f]ederal adjudicators (including administrative law judges) on how to consider [GAF] ratings . . . when assessing disability claims involving mental disorders." Doc. 13-1 at 1. The SSA acknowledged that although the APA no longer included GAF scores in the latest version of the DSM, the SSA would "continue to receive and consider GAF in medical evidence." *Id.* at 2. The SSA noted that "[u]nless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight," and therefore should not be used "as the primary support for findings of impairment severity or of mental limitations." *Id.* at 3. The SSA further cautioned that adjudicators should not rely solely on GAF scores to support a disability decision, equate a particular GAF score with a listing-level limitation, or equate a particular GAF score with a particular mental RFC assessment. *Id.* at 3-4.

Here, the ALJ used Plaintiff's GAF scores in accordance with the SSA's guidance. Moreover, Plaintiff's GAF scores were relatively consistent. Plaintiff received 22 GAF scores within the range of 51 to 58. *See* A.R. 466, 579, 589, 610, 619, 626, 636, 639, 641, 651, 661, 670, 687, 805, 880, 953, 958, 986, 994, 1207, 1238, 1243. The ALJ afforded only "partial weight" to outlier GAF scores on both ends of the spectrum (A.R. 30), including scores of 48 (A.R. 741, 772), 50 (A.R. 1263), and 63 (A.R. 1168). The GAF scores were considered in the context of a more thorough medical examination, supported by detailed notes from the treating or examining physician. The ALJ found that the moderate GAF scores were consistent with other evidence in the record, including the evidence of significant daily activities and the opinion of Dr. Rappaport that Plaintiff could reenlist in the military. The ALJ did not rely solely on GAF scores to

support a disability determination, nor did he equate a GAF score with a listing-level limitation or with a particular mental RFC assessment.

### 3. Daily Activities.

Plaintiff argues that the ALJ improperly rejected her symptom testimony as inconsistent with her activities of daily living. Doc. 13 at 11-12. Plaintiff faults the ALJ for failing to show how her activities were inconsistent with any particular symptoms or their severity. *Id.* Plaintiff also contends that the record does not show that she spent a substantial part of a typical day engaged in activities of daily living. *Id.* at 12.

Even where a claimant's reported activities of daily living "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). As noted above, the ALJ recounted a thorough list of Plaintiff's activities of daily living. A.R. 26-27, 33-34. The extent and nature of these activities provided substantial evidence for the ALJ to conclude that Plaintiff's activities consumed a significant part of her day. The ALJ acknowledged that Plaintiff provided some evidence of difficulty functioning, including both physical and mental limitations, but the ALJ found that these limitations were not as severe as alleged due to their inconsistency with Plaintiff's daily activities. Because the ALJ's findings are supported by substantial evidence and there is no legal error, they must be upheld.

### B. VA Disability Determination.

Plaintiff contends that the ALJ improperly rejected the VA's disability determination. Doc. 13 at 12-14. Although an ALJ must ordinarily afford the VA's disability determination "great weight," he can afford it less weight if he provides "persuasive, specific, valid reasons for doing so that are supported by the record." *McCarthey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted).

The ALJ rejected the VA's disability determination as inconsistent with both VA records and Plaintiff's other medical evidence. First, the ALJ noted that the VA

1  determination is inconsistent with Plaintiff's extensive activities of daily living set forth
2  in its records, as recounted above.  A.R. 34.  Second, the ALJ found that the
3  determination was inconsistent with other evidence in Plaintiff's file, including the
4  medical opinion of Dr. Rappoport and the January 3, 2012 consultative examination.
5  A.R. 31-32, 34.  Plaintiff seeks to undermine the ALJ's reliance on Dr. Rappoport's
6  opinion as conclusory and not based on physical evidence, but Dr. Rappoport treated
7  Plaintiff for over four years when he wrote the letter.  He did not provide an unqualified
8  opinion that Plaintiff was not disabled so as to prevent her from re-enrolling in the
9  military; instead, he recommended some limitations on high-impact physical limitations.

The Court finds that the ALJ provided persuasive, specific, and valid reasons for affording little weight to the VA's disability determination.

### C. Medical-Vocational Guidelines.

Plaintiff argues that the ALJ erred by relying on the Medical-Vocational Guidelines ("Guidelines") because they failed to account for non-exertional limitations that significantly limited the range of work Plaintiff could perform.  Doc. 13 at 14-16. "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the" Guidelines.  *Tackett*, 180 F.3d at 1099.

> The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant.  These tables are commonly known as "the grids."  The grids categorize jobs by their physical-exertional requirements and consist of three separate tables – one for each category:  "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00.  Each grid presents various combinations of factors relevant to a claimant's ability to find work.  The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of

>either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.  *See id.*

*Id.* at 1101 (emphasis in original; footnote omitted).

The Commissioner may rely on the Guidelines "where they *completely and accurately* represent a claimant's limitations." *Id.* (emphasis in original; citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).  "In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Id.* (emphasis in original).  An alleged non-exertional limitation "does not automatically preclude application of the" Guidelines; instead, the Guidelines are inapplicable only when a claimant's "sufficiently severe" non-exertional impairments "significantly limit the range of work permitted by his exertional limitations." *Id.* at 1101-02 (citation omitted).  In the case of significant limitations, the ALJ must rely on a vocational expert to establish that there are jobs that exist in significant numbers that a claimant could perform. *Id.* at 1103-04.

Here, the ALJ relied on the Guidelines to determine that there are jobs Plaintiff could perform.  In reaching this conclusion, the ALJ considered that Plaintiff was subject to additional limitations, which, the ALJ concluded, "have little or no effect on the occupational base of unskilled light work" because there are a significant number of jobs that qualify as sedentary work.  A.R. 36.  Plaintiff alleges that the ALJ should not have relied on the Guidelines because Plaintiff suffers from non-exertional impairments sufficiently severe as to impact her ability to work.  Doc. 13 at 15.  Plaintiff specifically identified the ALJ's finding that Plaintiff could only perform simple, repetitive tasks and that Plaintiff testified that she needed to lay down during the day.

The ALJ did not err in relying on the Guidelines despite the fact that Plaintiff could perform only simple repetitive tasks. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the

grids inapplicable to the particular case."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.00(b), (g); *see also Angulo v. Colvin*, 577 F. App'x 686, 687 (9th Cir. 2014) (unpublished) (holding that reliance on the Guidelines was appropriate despite "restriction to nonpublic, simple, repetitive work"); *Drawn v. Colvin*, No. CV15-03787-BRO-KES, 2016 WL 2621296, at *11 (C.D. Cal. Mar. 24, 2016), *report and recommendation adopted*, 2016 WL 2349090 (C.D. Cal. May 3, 2016) ("Plaintiff has not, and cannot, prove that the limitation to simple, repetitive work so significantly erodes the occupational base at all exertional levels as to render the Grids inapplicable.").

Nor did the ALJ err by failing to account for Plaintiff's testimony that she was required to lay down during the day. As discussed above, the Court concluded that the ALJ's decision to discount Plaintiff's symptom testimony was supported by substantial evidence and was not based on legal error. This non-exertional limitation therefore is not sufficiently severe to make the grids inapplicable. The ALJ was not required to rely on a vocational expert in determining that jobs exist that Plaintiff could perform.

**D.     Simple, Repetitive Tasks.**

Plaintiff contends that the ALJ erred by failing to account for moderate limitations in social functioning recognized at step three when the ALJ concluded at step four that Plaintiff's RFC is limited to simple, repetitive tasks. Doc. 13 at 16-17. The Ninth Circuit has recognized that the third and fourth steps involve distinct inquiries – a limitation at step three does not necessarily equate to a limitation at step four. *See Hoopai*, 499 F.3d at 1076 (recognizing a mild or moderate non-exertional limitation at step three while concluding that it need not be explicitly incorporated into the RFC at step four). An ALJ does not commit legal error, however, when he incorporates a moderate non-exertional limitation recognized at step three into a "simple tasks" limitation at the step four RFC formulation, so long as it is supported by the medical evidence in the record. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him – Dr. Eather's recommended restriction to 'simple tasks.'").

At step three, the ALJ concluded that Plaintiff has moderate limitations in social functioning. A.R. 26. At step four, the ALJ found that Plaintiff has the RFC to perform "light work as defined in 20 [C.F.R. §] 404.1567(b) except she can perform only simple, repetitive tasks." A.R. 27. The ALJ afforded "great weight" to state psychological consultants who determined that Plaintiff could perform simple, repetitive tasks despite moderate limitations in social functioning. A.R. 34-35; *see also* A.R. 86, 89-90, 103, 106-08. The ALJ's determination that Plaintiff could perform simple, repetitive tasks despite moderate difficulties in social functioning was supported by substantial evidence.

**E.   Work Capacities.**

Plaintiff asserts that the ALJ failed to articulate any basis for Plaintiff's RFC formulation. Doc. 13 at 17-20. An ALJ is tasked not only with determining whether a claimant is entitled to disability benefits, but also with providing his reasoning behind the decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). There is, however, "'no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.'" *Gilbert v. Colvin*, No. CV-15-02130-PHX-DLR, 2016 WL 3067767, at *3 n.2 (D. Ariz. June 1, 2016) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

As the Commissioner notes, the ALJ in this case spent nearly eight full pages discussing the medical evidence underlying his RFC determination. Doc. 17 at 15; *see also* A.R. 27-35. This RFC determination is supported by several medical opinions cited in the ALJ's decision, including those of Dr. Aaron Brown, the state agency medical consultants, and the state agency psychological consultants. A.R. 32, 34-35. What is more, Plaintiff fails to acknowledge that the ALJ provided additional bases for his RFC determination, including the objective medical assessments such as Plaintiff's GAF scores and Plaintiff's reported activities of daily living. A.R. 35. The Court has already addressed both of these issues. The ALJ's RFC determination was supported by substantial evidence.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 8th day of August, 2016.

_David G. Campbell_
United States District Judge